IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLENTOWN CENTRAL CATHOLIC HIGH SCHOOL | : : : | CIVIL ACTION |
| v. | : : | NO.  22-3139 |
| SODEXO OPERATIONS, LLC, SIMCO SALES SERVICE OF PA, INC. | : : | |

# MEMORANDUM

**MURPHY, J.**                                                                                                          January 11, 2024

An ice-cream delivery man slipped and fell on the ice outside Allentown Central Catholic High School.  But this is not that case.  This case is about whether his employer, Simco, has to cover the money that the School paid the man for his injuries.  The School relies on a contract that indemnifies Simco's ice-cream customers, like the School.  But the problem is that the School wants indemnification for its own negligence, and Pennsylvania courts frown on that.  An agreement so "hazardous" must be explicit and cannot arise from general indemnification language.

Keen readers have already guessed that the indemnification language at issue here is neither entirely general nor neatly specific.  Rather, the contract language here calls for indemnification generally, and mentions negligence only at the end, where it provides for an exception for when the School is ***solely*** negligent.  The School says that's enough to make its case, because the obvious inference is that the parties agreed to indemnify the School for its own ***partial*** negligence.  (As luck would have it for the School, a jury found it only partly negligent.) There is no controlling Pennsylvania authority addressing this sole-exception language, but we

think it clear enough that Pennsylvania courts applying what's known as the *Perry-Ruzzi* rule would agree with the School.  For that reason, we grant the School's motion for summary judgment.  We also grant Simco's motion for summary judgment on breach of contract because the School failed to show that Simco lacked its required insurance coverage.

**I.      Background**

The School and Simco filed cross-motions on largely common and simple facts.  The School contracted with Sodexo to provide food services at the School.  DI 30 at 3 (ECF).  Sodexo, in turn, contracted with Simco to supply ice cream.  *Id.* at 2-3 (ECF).  One day, Simco employee Bernard Hornick slipped on ice while making a delivery to the School.  *Id.* at 2 (ECF).  He sued the School and Sodexo for negligently failing to remove the ice.  *Id.*  The School settled with Mr. Hornick before trial and paid him $300,000 for a joint tort release.  *Id.* at 5 (ECF).  Sodexo went to trial, and the jury returned a verdict for $967,241.26.  DI 41-3 at 4 (ECF).  On the verdict sheet, the jury attributed negligence as follows: 60% to the School, 40% to Mr. Hornick, and 0% to Sodexo.  *Id.*  Sodexo is out of the picture now.  DI 38.  This case is now about Simco's refusal to indemnify the School.

The School traces its rights to the agreement between Sodexo and Simco.  *See* DI 1-6 (the Sodexo-Simco agreement).  There appears to be no dispute that the School is a third-party beneficiary of the agreement.  *See* DI 41-2 at 8-9 (ECF) (the School explaining the reasons for this); DI 46 at 6 (ECF) (Simco acknowledging the same).  In the key indemnity language, it is undisputed that Simco is the "seller," and the School is the "buyer":

> 3. <u>Indemnity.</u>  SELLER hereby agrees to indemnify, defend, and hold BUYERS harmless from and against any claim, demand, cause of action, liability, loss, damage, cost or expense which directly or indirectly arises out of or is in any way associated with (a) a breach of the guaranty or warranty set forth above, or (b) any goods or services heretofore or hereafter received by BUYERS from SELLER, including but not limited to claims of personal injury, death (including

2

> injury or death to employees of SELLER) or property damage caused during or a result of the manufacturing, warehousing, sale, delivery, and/or distribution functions of the SELLER and use thereof, ***to the extent not due to the sole negligence of BUYERS***; . . . .

DI 1-6 at 18 (ECF) (emphasis added). The parties ask us to resolve whether this provision entitles the School to indemnification for its own *partial* negligence.

The School's other claim is that Simco breached the Sodexo-Simco agreement by failing to secure liability coverage naming the School as an additional insured:

> 4. <u>Insurance</u>. SELLER shall, at all times, maintain the types of insurance in the levels set forth on Schedule 1. . . .
>
> This insurance shall name BUYERS as an additional insured under an "Additional Insured" endorsement, shall be primary over any insurance maintained by BUYERS, and shall provide that BUYERS will be given at least (30) days' prior written notice of any cancellation or reduction in coverage. Upon execution of this Indemnity Agreement, and thereafter ten (10) days prior to any renewals, SELLER shall provide BUYERS with a Certificate of Insurance evidencing the coverages herein required, and Identifying the "Certificate Holder" as Sodexo, Inc. . . . SELLER shall cause its insurers to endorse the required insurance hereunder to waive any rights of subrogation against BUYERS. Should SELLER fail to adhere to the requirements of this Section, BUYERS may order any such insurance and charge the cost thereof to SELLER, which amount shall be due and payable by SELLER upon demand.

DI 1-6 at 18-19 (ECF) (again, Simco is the "seller" and the School is the "buyer"). Simco obtained an insurance policy from American Zurich Insurance Co., which in turn provided:

> E. Additional Insured – Vendors
>
> 1. The following change applies if this Coverage Part provides insurance to you for "bodily injury" and "property damage" included in the "products-completed operations hazard":
>
> Section II – Who Is An Insured is amended to include as an additional insured any person or organization (referred to throughout this Paragraph E. as vendor) who you have agreed in a written contract or written agreement, prior to loss, to name as an additional insured, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business:

3

DI 42-3 at 2-3 (ECF). Zurich denied the School's tender because "it is the school that is responsible for maintaining the area of this fall" and "Simco has no responsibility to defend the school for its own negligence." DI 45-2 at 3 (ECF); *see id.* at 7 (reiterating denial because Zurich has "no duty to defend or indemnify [the School] due to its sole negligence"). Now, the School argues that the Zurich policy does not meet Simco's obligation because the School does not fall within the "Additional Insured – Vendors" provision excerpted above.

II.     **Analysis**

We grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Here, the parties cross-moved on a common nucleus of facts and neither party relies on a dispute of material fact to forestall summary judgment. There is no dispute that Pennsylvania law governs. "It is the function of the court to interpret insurance contracts under Pennsylvania law." *Am. Auto. Ins., Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011). We will read the policies as a whole, construe them in accordance with their plain and ordinary meanings, and determine the intent of the parties as manifested by the language of the policies. *Id.* Clear and unambiguous language will be enforced. *Id.*

    a.  **Indemnification**

On its face, the broad indemnity provision in the Sodexo-Simco agreement covers the School because the School is a buyer, and the School was partially negligent — not solely negligent.[1] But there is a problem. Pennsylvania courts require that "if parties intend to include

---

[1] Simco argues that it should not be bound by the jury verdict in Mr. Hornick's trial because it was not a party in that case. But on summary judgment, Simco has not established a genuine dispute of material fact on the question of whether the School was partially negligent (rather than solely negligent). This is not a question of claim preclusion or issue preclusion, as Simco styled it, but rather a much more mundane application of Rule 56.

within the scope of their indemnity agreement a provision that covers losses due to the indemnitee's own negligence, they must do so in clear and unequivocal language.  ***No inference from words of general import can establish such indemnification***." *Ruzzi v. Butler Petroleum Co.*, 588 A.2d 1, 4 (Pa. 1991) (emphasis added).  "The liability on such indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation." *Perry v. Payne*, 66 A. 553, 557 (Pa. 1907).  This thumb on the scale, known as the *Perry-Ruzzi* rule, can override even plain and ordinary meaning:

> A fundamental rule of construction in the law of contracts states that words, phrases and clauses will be given their plain and ordinary expressed meaning.  If this is so, then this particular area of law, indemnification for damages or injuries arising from negligent acts, could be thought of as an exception to the general rule.  If literal effect was given to these clauses then indemnification would be enforced.  Yet due to policy and practical considerations decisions have been handed down indicating that such generally worded indemnification clauses will not be construed to mean that the indemnitor will indemnify the indemnitee for liability resulting from the indemnitee's own negligence.

*Deskiewicz v. Zenith Radio Corp.*, 561 A.2d 33, 35 (Pa. Super. Ct. 1989).  In that way, the rule is powerful, but limited: "the *Perry–Ruzzi* rule is a rule of contract interpretation for clauses that relieve a party of responsibility for its own negligence, which is applied only in the unique circumstances of an indemnity arrangement." *Mace v. Atl. Refin. Mktg. Corp.*, 785 A.2d 491, 496 (Pa. 2001) (explaining *Topp Copy Prods, Inc. v. Singletary*, 626 A.2d 98, 100-01 (Pa. 1993)).

In part, the Sodexo-Simco agreement here provides for broad liability, which alone is insufficient under *Perry-Ruzzi*.  But at the end of the relevant paragraph, the agreement includes an exception: "to the extent not due to the sole negligence of BUYERS."  DI 1-6 at 18 (ECF) (remember, the School is a buyer and potential indemnitee).  That exception strikes the reader in two ways.  First, it expressly implicates the notion of the indemnitee's own negligence.  In most

*Perry-Ruzzi* cases, it is never mentioned at all. Second, the express exception of sole negligence invites the obvious inference that the agreement *does* cover the buyer's negligence so long as it was *not* sole negligence. But does that inference — fair as it may be — flunk *Perry-Ruzzi*'s requirement for specificity? Simco says it does. Unfortunately, Pennsylvania courts have not clearly answered the question.

At the risk of oversimplifying by stripping away the context of each of these cases, here is a summary of what appears to be the most relevant precedent:

| Case | Language (emphasis added) | Indemnification allowed? |
|---|---|---|
| *Mace v. Atl. Refin. & Mktg. Corp.*, 717 A.2d 1050, 1052 (Pa. Super. Ct. 1998) (*rev'd on other grounds*). | [L]essee [Barqawi] agrees to indemnify, hold harmless and defend Lessor [Atlantic] from and against all claims, losses and damages for personal injury or death or damage to property or clean up costs and fines occurring on the Premises, arising out of lessee's use or occupancy of the Premises, or arising out of Lessee's use, custody or operation of the Store Equipment, Loaned Equipment, or in any other equipment on the Premises *excepting any damage or loss caused solely by the negligence of Lessor or solely by Lessor's failure to perform its obligations hereunder*. | No |
| *Woodburn v. Consolidation Coal Co.*, 590 A.2d 1273, 1275 (Pa. Super. Ct. 1991). | SUBCONTRACTOR shall assume all risks of the premises and shall indemnify and hold harmless Consol and Industrial, their directors, officers and employees, from and against any and all claims and/or demands including all costs and expenses, including attorneys fees, for injury or alleged injury or death to persons, or damage to property, caused by, arising from, incidental to, connected with or growing out of the work to be performed under this construction agreement, including, but not limited to, any work to be performed by a subcontractor or agent of SUBCONTRACTOR; *provided, however, that such indemnification and hold harmless shall not apply to claims for injury* or alleged injury or death to persons, or damage to property (other than loss of, damage to, or loss of use of SUBCONTRACTOR'S property) *caused by the sole negligence of Consol or INDUSTRIAL*. | Yes |

6

| Case | Language (emphasis added) | Indemnification allowed? |
|---|---|---|
| *Bernotas v. Super Fresh Food Mkts., Inc.*, 816 A.2d 225, 227-28 (Pa. Super. Ct. 2004) (*rev'd on other grounds*). | The Contractor shall assume entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons . . . of loss of use thereof, caused by, resulting from, arising out of, or occurring in connection with the execution of the work provided for in this contract and/or caused or contributed to by any negligent or willful act, error, or omission on the part of the Company . . . . ***Provided, however, that this indemnification shall not apply to liability caused by or resulting from the sole negligence of the Company and/or its indemnification is prohibited by law.*** | Yes |
| *Hershey Foods Corp. v. Gen.Elec. Serv. Co.*, 619 A.2d 285, 286-87 (Pa. Super. Ct. 1992). | [GESCO] shall indemnify and hold harmless [Hershey] and their agents and employees from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss or[sic] use resulting therefrom, and (b) is caused in whole or in part by any negligent act or omission of [GESCO], . . . anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, ***regardless of whether or not it is caused in part by a party indemnified hereunder.*** | Yes |

As one can see, *Mace* and *Woodburn* have materially identical language that is the most analogous to the Sodexo-Simco agreement, because in both those cases, the clause never mentions negligence until the exception for sole negligence. Yet they reach different results. The clauses in *Bernotas* and *Hershey* leave some confusion at their tail ends, referring to sole negligence or cause in part, but they both introduce negligence before that, referring to any negligent act generally. So while a bit cluttered, those clauses do not rely as heavily on inference

7

as the *Mace*/*Woodburn* clauses. But they do show that *Perry-Ruzzi* does not demand a specific formula or *in haec verba* so long as the language clearly conveys liability.

In *Mace*, the Superior Court addressed our problem head-on, holding that at best, "the exception clause creates an ambiguity," but "*Perry-Ruzzi* demands precision," and "[s]uch inferential reasoning would violate the cardinal teaching of *Perry-Ruzzi*." 717 A.2d at 1052. To distinguish *Mace*, the School correctly points out that the decision was overturned by the Pennsylvania Supreme Court. But that court did not address the exception clause problem, because it held that *Perry-Ruzzi* was irrelevant because the appellant was not attempting to seek indemnification for its own negligence. 785 A.2d at 496-97. So we may (and do) consider the Superior Court's majority reasoning in *Mace* for its ability to persuade.

*Woodburn* — the School's best case — is a tougher obstacle for Simco because it was not overturned. Instead, Simco argues that we should simply ignore *Woodburn* because it violates *Perry-Ruzzi*. But the *Woodburn* court considered *Perry-Ruzzi* in great detail, considered the exception clause, and concluded that "[i]n the case at hand, we find that Industrial and Mohawk expressly agreed, by the terms of their contract, and intended, that Mohawk would indemnify Industrial against any and all claims arising from the work to be conducted under the contract, except for any injuries caused by the 'sole negligence' of Industrial." 590 A.2d at 1276. *Woodburn* correctly observed that none of *Perry*, *Ruzzi*, or other cases in that line contained a "sole negligence" exception.

We think a Pennsylvania court would side with *Woodburn* instead of the vacated Superior Court decision in *Mace*. It is true that *Perry-Ruzzi* disfavors inferences, but not all inferences are created equal. The rule prohibits inferences "of **general** import," *Perry*, 66 A. at 262 (emphasis added), and in that regard, Pennsylvania courts have consistently applied the rule

8

to language like that in *Perry*, which required a contractor to **generally** indemnify an owner "from all loss, costs or expense . . . arising from accidents to mechanics or laborers employed in the construction of said work . . . ," *id.* at 254. But here, as in *Woodburn*, the sole exception clause compels the **specific** inference that the parties intended indemnification for the buyer's partial negligence — and there is nothing ambiguous about that at all. Simco certainly offered no other compelling explanation for why the parties would have included that clause. In our view, the Superior Court in *Mace* overlooked the important distinction between an inference of general import and the specific and unambiguous inclusion of a sole exception clause — and indeed, did not discuss *Woodburn* at all.

For these reasons, we agree with the School and conclude that it is entitled to indemnification under the Sodexo-Simco agreement as a matter of law.[2]

b. **Breach of Contract**

On the School's second count, breach of contract, the dispute boils down to whether the School is among the "Additional Insured – Vendors." DI 42-3 at 3. Simco's reasoning for why the answer is "yes" has two steps. First, the Sodexo-Simco agreement required Simco to "name [the School] as an additional insured under an 'Additional Insured' endorsement" of its policy.

---

[2] The parties also argue about whether the indemnification provision in the Sodexo-Simco agreement waives the Pennsylvania Workers Compensation Act's prohibition on employer liability to third parties absent an express writing. *See* 77 P.S. § 481(b); *see also Snare v. Ebensburg Power Co.*, 637 A.2d 296, 298 (Pa. Super. Ct. 1993). The Sodexo-Simco agreement language refers to employees, and the negligence aspect of that issue rises and falls with the answer to the *Perry-Ruzzi* question. *See Bester v. Essex Crane Rental Corp.*, 619 A.2d 304, 307 (Pa. Super. Ct. 1993) ("We agree that if the indemnification agreement is clear and includes indemnification in the event of either the indemnitee's or the employer's own negligence, its enforceability does not require that the employer, in addition, expressly and *in haec verba* waive the immunity provided by § 481(b) of the Workmen's Compensation Act."). The parties do not directly state this, but they do not present any argument that would differentiate the two issues either.

9

DI 1-6 at 19 (ECF). Second, Simco did so by taking out the Zurich policy because the Zurich policy names as additional insured "any person or organization . . . who [Simco has] agreed in a written contract or written agreement, prior to loss, to name as an additional insured." DI 42-3 at 3 (ECF). Seems simple enough, but the School makes three arguments to establish breach.

First, the School argues that the language of the Zurich policy does not apply to the School because the "incident giving rise to this litigation is not associated with the sale of the Simco products. Instead, the underlying claim is one for bodily injury caused by a slip and fall by a delivery person." DI 45 at 2 (ECF). This is a false dichotomy. The injury arose during and because of the delivery of the Simco products, and thus falls within the Zurich policy.

Second, the School argues that the Zurich policy does not cover the School because it does not include an express endorsement naming the School as an additional insured. DI 45 at 2 (ECF). The Zurich policy includes two express endorsements for vendors — Whole Foods Market, Inc. and LSG Sky Chefs USA, Inc. — neither of which is the School. DI 45-1 at 74-77 (ECF). But the problem with the School's argument is that the School has not pointed out anywhere that the Zurich policy requires that express identification to trigger coverage. Absent such a requirement, the general provision discussed above applies.

Third, the School argues that "several tenders of defense made by [the School] to Zurich have been denied." DI 45 at 2. In our view, the denials tend to support Simco's view — not the School's — because the denials appear to assume that the Zurich policy applies, and deny coverage only because of the role the School's negligence played in the incident.

We therefore conclude that there was no breach of contract as a matter of law because the Zurich policy satisfied Simco's obligation under the Sodexo-Simco agreement.

### III.     Conclusion

To recapitulate, on the first count — indemnification — we agree with the School, grant its motion for summary judgment, and deny Simco's. On the second count — breach of contract— we agree with Simco, grant its motion for summary judgment, and deny the School's. The School's proposed order has us ordering Sodexo to pay the School $300,000 and award attorney fees, but the record affords insufficient basis to reach that conclusion, so we will stop there.